UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 09/26/2022
```

AMADOU BARRY,

        Plaintiff,

  -against-

UNITED STATES OF AMERICA,

        Defendant.

21-CV-7684 (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

      Plaintiff Amadou Barry, a citizen of Guinea, brings this action against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et seq.*, seeking damages arising out of his initial confinement in an adult detention facility after he presented himself at the U.S.-Mexico border, seeking asylum, in October 2017. Although plaintiff told U.S. Customs & Border Protection (CBP) that he was a minor, and presented a copy of his Guinean birth certificate, showing that he was 17 years old, he was not immediately believed, in part because while in route to the U.S. he had represented to Panamanian officials that he was 25 years old. After four months in the adult detention facility, plaintiff was transferred to the custody of the Department of Health and Human Services (HHS), Office of Refugee Resettlement (ORR), and then, after another three months, he was released to join a cousin in New York. Once in New York, plaintiff enrolled in high school, graduated, and matriculated at the College of the Holy Cross in Worcester, Massachusetts, where he has resided on campus (during the academic year) since August 2021.

      Now before the Court is defendant's motion to dismiss plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, to transfer venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). (Dkt. 23.) For the reasons that follow, the Court grants the transfer motion and consequently does not reach the motion to dismiss.

## I.   FACTUAL BACKGROUND

Plaintiff was born on July 8,  2000, in Guinea, Africa. Compl. (Dkt. 1) ¶ 22. In November 2016, after he was briefly detained and beaten by Guinean police, because of his affiliation with a minority political party, he fled from Guinea to Brazil. *Id.* ¶ 23. Seven months later, he began traveling with a group of African men from Brazil to the United States, in the hopes of reaching and living with a cousin in New York City. *Id.* ¶ 24. On the advice of his travel companions, plaintiff lied about his age during the journey, fearing that he would be detained if he were revealed as a minor. *Id.* ¶ 24. Thus, he informed Panamanian authorities on July 22, 2017 that he was born on July 8, 1992 – which would have made him 25 years old – when in fact he was 17. *Id.* ¶ 25.

When plaintiff reached Mexico in August 2017, he contacted his father in Guinea and asked him to get a copy of his birth certificate for use at the U.S. border.  Compl. ¶ 26. Plaintiff had lost his passport while in Brazil. *Id*. Plaintiff's father obtained the birth certificate, scanned it, and emailed the scanned copy to one of plaintiff's travel companions. *Id*. ¶ 27. The document bore an official seal and signature, and accurately reflected that plaintiff was born on July 8, 2000. *Id*. ¶ 29. When plaintiff entered the United States at Hidalgo, Texas, on October 17, 2017, he presented a printout of the scanned image to the first CBP officer he encountered and told the officer, in his initial interview, that he was 17. *Id.* ¶¶ 31-32. He then executed a sworn statement reiterating that he was 17, describing the basis of his flight from Guinea, and explaining why he had lied about his age to Panamanian officials. *Id.* ¶¶ 31-34.

Plaintiff's age upon arrival is relevant because, as he explains in his Complaint, the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 8 U.S.C. § 1232, requires that the Department of Homeland Security (DHS) notify ORR within 48 hours of either (1) the apprehension or discovery of an unaccompanied alien child or (2) any claim or suspicion that an

alien in DHS's custody is a minor under age 18. Compl. ¶¶ 12-13; *see also* 8 U.S.C. § 1232(b)(2). Special considerations are granted to minor aliens entering the United States under the TVPRA, including that CBP and Immigration and Customs Enforcement (ICE) – both of which are components of DHS – must remand them to ORR's custody within 72 hours, absent "exceptional circumstances." Compl. ¶ 13; *see also* 8 U.S.C. § 1232(b)(3). The TVPRA also requires that unaccompanied children be "promptly placed in the least restrictive setting that is in the best interest of the child." Compl. ¶ 13 (quoting 8 U.S.C. § 1232(c)(2)(A)) (emphasis omitted). Additionally, the *Flores* settlement agreement, in place since 1997,[1] requires DHS to segregate unaccompanied minors from unrelated adults, *id.* ¶ 15, and "DHS's own internal policies" require that an individual be treated as an unaccompanied child if there is a "reasonable claim or suspicion" that he or she is underage, and that age determinations be made based on "the totality of all available evidence," including the statements of the individual in question, government-issued documents, and forensic bone or dental assessments. Compl. ¶¶ 14, 16-18.

Plaintiff alleges that, in contravention of the TVPRA and other applicable laws and policies, CBP did not immediately notify ORR that he had identified himself as a minor. Compl. ¶ 34. Instead, a CBP officer told plaintiff that a fingerprint record generated during his journey from Brazil to the United States indicated that he was 25, stated that he did not "appear to be a minor," and commented that his birth certificate "appeared to be home made and fraudulent." Compl. ¶¶ 34-36. On this basis, CBP placed plaintiff into expedited removal proceedings under 8 U.S.C. § 1225(b), referred him for a credible fear interview, and transferred him to the Port Isabel

---

[1] Stipulated Settlement Agreement, *Flores v. Reno*, Case No. 85-4544 (C.D. Cal. Jan. 17, 1997), *available at* https://www.aila.org/File/Related/14111359b.pdf (last accessed Sept. 26, 2022).

Detention Center (PIDC), an adult detention facility operated by ICE in Los Fresnos, Texas. *Id.* ¶¶ 37-38.

Thereafter, notwithstanding that plaintiff "repeatedly" told ICE officers and other detainees that he was a minor, he spent four months in the PIDC, where he was treated as an adult, surrounded by other adults (some of whom, "upon information and belief," were "detained because of criminal conduct"), and was unable to contact his family, consult with a lawyer, or meet with a mental health professional. Compl. ¶¶ 39, 41-43. During this time, plaintiff's "mental health deteriorated and he became anxious, fearful and depressed." *Id.* ¶ 43. He cried frequently and was unable to sleep at night. *Id.*

During his credible fear interview with an asylum officer on November 1, 2017, plaintiff explained again that he was a minor. Compl. ¶ 44. The asylum officer found him to be credible, and DHS referred him to removal proceedings before an Immigration Judge (IJ). *Id.* Plaintiff then appeared at four hearings between November 2017 and February 2018, explaining each time that he was a minor. *Id.* ¶ 45. At a January 22, 2018 hearing, the IJ ordered ICE to provide additional evidence of plaintiff's age, and one week later ICE performed a dental examination of plaintiff that was incompatible with ICE's initial assumption that he was 25 years old. *Id.* ¶¶ 46-47. Then, on February 20, 2018, the Embassy of Guinea verified the authenticity of plaintiff's birth certificate. *Id.* ¶ 50. Finally, on February 27, 2018, ICE remanded plaintiff to ORR custody, which transported him to a facility in Chicago, where he stayed until May 23, 2018. *Id.* ¶¶ 52-54. He was then released to his cousin in New York City. *Id.* ¶ 54.

While living with his cousin in New York City, plaintiff obtained a New York State ID card and attended high school in the Bronx, graduating in the spring of 2021. Barry Decl. (Dkt. 35-1) ¶¶ 2-3. In March of that year he was accepted by Holy Cross, which offered him a scholarship

covering housing, books, and meals, in addition to tuition. *Id.* ¶ 4. Since August 2021, plaintiff has lived on the Holy Cross campus in Massachusetts, where he also holds a part-time job through the school's work-study program. *Id.* ¶¶ 4-7. However, in his declaration (signed on February 24, 2022, during the second semester of his freshman year), plaintiff stated that he expected to return to New York for the summer. *Id.* ¶ 7.

## II.    PROCEDURAL HISTORY

On February 25, 2020, plaintiff submitted an administrative claim to CBP, DHS, and ICE. Compl. ¶ 6. On March 15, 2021, CPB denied the claim. *Id.* On September 14, 2021 (within the six-month window prescribed by the FTCA, *see* 28 U.S.C. §§ 2675(a), 2401), plaintiff filed his Complaint in this Court. He asserts claims for false imprisonment, intentional infliction of emotional distress, and negligence, all pursuant to Texas law, and seeks damages. Compl. ¶¶ 61-80. On December 1, 2021, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Dkts. 16-17.)

On January 20, 2022, the United States filed its motion to dismiss the Complaint or, in the alternative, to transfer venue to the Southern District of Texas, supported by a memorandum of law (Def. Mem.) (Dkt. 24) and the Declaration of Elizabeth J. Kim (Kim Decl.) (Dkt. 25), which in turn attaches, as Exhibits A-F, declarations from four CPB officers who processed plaintiff's application for admission to the United States, as well as the supervisory ICE officer assigned to plaintiff's case and the ICE officer who ultimately authorized his release in February 2018, all of whom attest that they live and work in Texas. (Dkts. 25-1 through 25-6.)

Plaintiff filed his opposition memorandum (Pl. Opp.) (Dkt. 34) on February 25, 2022, accompanied by plaintiff's declaration and the affidavit of psychologist Thomas J. Deters (Deters Aff.) (Dkt. 35-2), who reviewed plaintiff's file, interviewed him via Zoom for a total of 4.5 hours,

and attests that although plaintiff is not now reporting substantial symptoms of PTSD (post-traumatic stress disorder), he has experienced multiple stressors in his life, including his detention at PIDC, and that forcing him to return to Texas for trial in this action "could substantially contribute to a regression in his psychological functioning." Peters Aff. ¶ 20(f).

Defendant filed its reply brief (Dkt. 39) on March 11, 2022.

## III.   THE MOTION

Liability under the FTCA is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In its moving brief, the United States argues that the Complaint fails to state any cognizable claim under Texas law. Def. Mem. at 9-14, 17-20. It further argues that the Court lacks subject matter jurisdiction over one of plaintiff's claims – for negligence *per se* – because there is no "general Texas common-law duty" corresponding to the government's obligations under the TVPRA, agency regulations, or *Flores* regarding the processing of undocumented minors. *Id.* at 14-17.

In the alternative, the government argues that this Court should exercise its broad discretion under 28 U.S.C. § 1404(a) to transfer venue to the Southern District of Texas, because: (1) all of the government's percipient witnesses are located in that district; (2) all of the operative events alleged in the Complaint took place in that district; (3) the Southern District of Texas would be more familiar with Texas tort law, which must be applied here; (4) the "sources of proof," including documents and the PIDC itself, are located in that district; (5) plaintiff's choice of forum is entitled to "diminished" weight where "the operative facts upon which the litigation is brought bear little material connection to the chosen forum" (quoting *Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 368 (S.D.N.Y. 2009)); and (6) although the United States has greater means

than any individual plaintiff, plaintiff Barry is represented by a large law firm with an office in the Southern District of Texas. Def. Mem. at 20-24.

Plaintiff opposes both branches of the motion. With respect to the sufficiency of the Complaint, he argues that he has adequately pleaded each of his claims under Texas law, and that his negligence *per se* claim is analogous to the Texas tort of "negligent undertaking." Pl. Opp. at 6-21. With respect to venue, plaintiff contends that the case should remain in this district because his choice of venue is "presumptively" entitled to "substantial deference," and the presumption is particularly strong here in light of his limited means and his identification of New York City as his home. *Id.* at 21-23. Plaintiff further contends that traveling to Texas would be "difficult for [him] mentally," Barry Decl. ¶ 8, and points out that even though he is in residence on campus at Holy Cross in Massachusetts, traveling to New York for trial would be less expensive for him than traveling to Texas. *Id.* ¶ 9. Dr. Deters adds that plaintiff needs to focus on his studies, and argues that requiring him to travel to Texas for trial "would add one more barrier to Mr. Barry's opportunity to succeed in college." Deters Aff. ¶ 20(f)(ii).

As for the location of witnesses and other proof, plaintiff points out that government employees are "available in any venue," *see* 28 U.S.C. § 1391(e)(1); that the government has the means to furnish travel and accommodations for its witnesses (or, in the alternative, to arrange remote depositions); and that electronic discovery minimizes the significance of the original location of the sources of proof. Pl. Opp. at 24-25. Plaintiff adds that this Court is capable of applying Texas law. *Id.* at 25.

## IV.   DISCUSSION

### A.   Order of Analysis

"Where district courts are presented with both a motion to dismiss, under Fed. R. Civ. P. 12(b)(6), and a motion to transfer venue, under 28 U.S.C. § 1404(a), they commonly address the

venue motion first, and, where transfer is appropriate, leave the motion to dismiss to be decided by the transferee court." *King v. Aramark Servs., Inc.*, 2019 WL 3428833, at *2 (W.D.N.Y. July 30, 2019) (quoting *Hart v. Crab Addison, Inc.*, 2014 WL 2865899, at *2 (W.D.N.Y. June 24, 2014)); *see also Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 413 (S.D.N.Y. 2017) (in light of the grant of defendant's motion to transfer venue, "the Court has no occasion to rule on [defendant's] motions for dismissal under Rules 12(b)(2) and 12(b)(6)," as "[t]he transferee court will be at liberty to resolve such motions or to solicit re-briefing on them"); *Havas Worldwide New York, Inc. v. Lionsgate Entmt. Inc.*, 2015 WL 5710984, at *1 (S.D.N.Y. Sept. 29, 2015) (granting § 1404(a) motion and denying Rule 12(b)(6) motion as moot); *Brown v. New York,* 947 F. Supp. 2d 317, 326 (E.D.N.Y. 2013) ("As the Court finds that transfer is appropriate, it defers decision on the Defendants' motion to dismiss for failure to state a claim to allow the transferee court an opportunity to consider the merits of the case."). Accordingly, the Court "begins its analysis with the venue motion." *King*, 2019 WL 3428833, at *2.

## B.    Section 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When deciding a motion to transfer venue, a district court must conduct a two-part inquiry: "First, the court must determine whether the action could have been brought in the proposed transferee forum," here, the Southern District of Texas. *Burgos v. United States*, 2017 WL 2799172, at *2 (S.D.N.Y. June 27, 2017) (quoting *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016)). "Second, the court must . . . determine whether transfer is appropriate." *Id.* (internal quotation marks omitted) (alteration in the original). The federal district courts have "broad discretion in making determination of convenience under

Section 1404(a)." *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021). In exercising that discretion, the courts commonly consider the following nine factors:

> (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Schuyler v. Sun Life Assurance Co. of Canada*, 2021 WL 5853991, at *3 (S.D.N.Y. Dec. 9, 2021); *accord Burgos*, 2017 WL 2799172, at *2; *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 477 (S.D.N.Y. 2006). "The factors do not comprise an exclusive list, and they should not be applied mechanically or formulaically but rather to guide the Court's exercise of discretion." *Matthews v. Cuomo*, 2017 WL 2266979, at *2 (S.D.N.Y. May 1, 2017). The moving party – here, the United States – bears the burden of establishing the propriety of the transfer by "clear and convincing evidence." *Schuyler*, 2021 WL 5853991, at *2 (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010)).

The first prong of the two-part inquiry is clear-cut. Claims under the FTCA may be brought in "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Thus, plaintiff could have filed this lawsuit in the Southern District of Texas, which is where he presented himself when he crossed the U.S. border and where he was detained, for four months, at the PIDC. *See* Compl. ¶¶ 30-51.

The second prong – whether transfer is "appropriate," *Burgos*, 2017 WL 2799172, at *2 – is also straightforward, but requires more in-depth discussion.

### 1.      Locus of the Operative Facts

The locus of the operative facts is a "primary factor" in deciding a § 1404(a) motion to transfer. *Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, 2021 WL 2688722, at *6 (S.D.N.Y.

June 30, 2021). Here, all of the operative events took place in the Southern District of Texas. *See* Compl. ¶¶ 30-51 (plaintiff crossed the border and was detained in Hidalgo, Texas, and was then transferred to the PIDC in Los Fresnos, Texas). Indeed, as the government points out, "[o]ther than Plaintiff's current residence, 'nothing connects this case to New York.'" Def. Mem. at 22 (quoting *Larca v. United States*, 2012 WL 6720910, at *3 (S.D.N.Y. Dec. 16, 2012)); *see also Burgos*, 2017 WL 2799172, at *2 (transferring case to the District of New Jersey where "little or nothing" connected it to New York other than plaintiff's domicile, and the "principal events" occurred in New Jersey, which is also where the "principal witnesses" were located). Moreover, while plaintiff claims residency in New York, he spends most of the year in Worcester, Massachusetts, *see* Barry Decl. ¶¶ 7, 9, further weakening any connection between this case and New York. Because "transfer to a district where the key operative events occurred serves 'the interests of justice,'" *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013) (quoting *Cohn v. Metro. Life Ins., Co.*, 2007 WL 1573874, at *3 (S.D.N.Y. May 31, 2007)), this factor weighs heavily in favor of transfer.

### 2. Convenience of the Parties

It would be more convenient for the defendant to litigate this case in the Southern District of Texas. *See* Def. Mem. at 24. It would be more convenient for the plaintiff to litigate in this Court. *See* Pl. Opp. at 23. This factor therefore does not tip the scales in either direction.

### 3. Convenience of the Witnesses

Plaintiff is correct that government employees are considered available for litigation in any venue in the country. *See* Pl. Opp. at 24 (citing 28 U.S.C. § 1391(e)(1)). But none of the six CBP and ICE officers with personal knowledge of the relevant facts is an individual defendant in this action, and all of them live and work in Texas. Def. Mem. at 21-22; *see also* Kim Decl. Exs. A-F.

On similar facts, the court in *Ruiz ex rel. E.R. v. United States*, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) transferred an FTCA case to the Eastern District of Virginia, where the minor plaintiff had been detained, in part because all eight CBP officers with personal knowledge of the relevant facts were stationed in that district, and none of them resided in New York. 2014 WL 4662241, at *11-13. Consequently, this factor also weighs in favor of transfer.

### 4.    Location of Relevant Documents and Relative Ease of Proof

The United States argues that the PIDC itself is "key evidence" in this matter, Def. Mem. at 23 (citing *Reynolds v. Xerox Educ. Servs., LLC*, 2013 WL 5303797, at *2 (S.D.N.Y. Sept. 20, 2013)), and suggests that the factfinder "may need to conduct a site visit." *Id.* at 23 n.5. While creative, that argument is not compelling, as plaintiff's claims have little to do with the physical structure of, or physical conditions at, the PIDC. Moreover, as plaintiff points out, in "today's world of faxing, scanning, and emailing documents," the original location of relevant documents and databases bears little relationship to the ease or difficulty of conducting discovery. Pl. Opp. at 24-25 (citing *Ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 422 (S.D.N.Y. 2012)). This factor, therefore, is also neutral.

### 5.    Relative Means of the Parties

Plaintiff, as noted above, argues that it would be more expensive for him to travel to Texas for trial than to New York, adding that trips to Texas could interrupt his college studies. Pl. Opp. at 22-23. The United States does not dispute that "its means are greater than those of Plaintiff," Def. Mem. at 24, but is quick to point out that in this case plaintiff is represented by *pro bono*

counsel from a large and well-resourced law firm, Norton Rose Fulbright, with an office in Houston, Texas.[2]

Given these facts, the relative means of the parties do not weigh heavily in favor of either side. Not only is document discovery now conducted, for the most part, electronically; in the post-pandemic world, remote depositions remain "the new normal," and in this case would likely relieve plaintiff of any need to travel physically to Texas except for trial. *See* Pl. Opp. at 24 (arguing the converse; that is, that if the case stays in New York, "Defendant's burden can be mitigated by conducting depositions either remotely or in plaintiff's counsel's Texas office"). Moreover, plaintiff is already a college sophomore, and the case is unlikely to proceed to discovery (much less trial) until defendant's Rule 12 motions are decided. Should the case ultimately advance to trial, the trial judge could no doubt minimize any disruption to plaintiff's studies by scheduling the proceeding (which would be a bench trial, *see* 28 U.S.C. § 2402) during a term break or vacation. In any event, the most significant drain on plaintiff's time at that stage of the case would likely be the hours spent preparing for, testifying at, and attending the trial itself – not the travel hours. In short, while the government undoubtedly has the means to transport its witnesses to New York if necessary, plaintiff has not shown that litigating in Texas "would be *unduly* burdensome to his finances." *It's a 10, Inc. v. PH Beauty Labs, Inc.*, 718 F. Supp. 2d 332, 338 (S.D.N.Y. 2010) (emphasis added) (quoting *NBA Props., Inc. v. Salvino, Inc.,* 2000 WL 323257, at *10 (S.D.N.Y.

---

[2] According to Google Maps, the firm's Houston office is about half a mile from the United States Courthouse in Houston. However, the Southern District of Texas has seven divisions, operating out of seven different courthouses. Cases arising in Hidalgo County, where plaintiff first encountered CPB, are ordinarily assigned to the courthouse in McAllen, Texas, while cases arising in Cameron County, the location of the PIDC, ordinarily go to the courthouse in Brownsville, Texas. *See* "Address, Hours, Phone Information," United States District & Bankruptcy Court, Southern District of Texas, https://www.txs.uscourts.gov/page/address-hours-phone-information (last visited September 26, 2022).

Mar. 27, 2000). Thus, while weighing slightly in favor of plaintiff, "[t]he relative means of the parties does not appear to be a significant factor in the convenience analysis." *Id.*

### 6. Availability of Process to Compel Attendance of Unwilling Witnesses

Neither party has identified any non-party witnesses who would be unwilling to travel to New York (if the case remains here) or Texas (if the case is transferred). *See* Def. Mem. at 24. This factor is therefore neutral. *See Martignago v. Merrill Lynch & Co., Inc.*, 2012 WL 112246, at *8 (S.D.N.Y. Jan. 12, 2012) (availability of process was a neutral factor where "[n]either side has identified any witnesses who would be unwilling to travel to New York or Texas to testify").

### 7. Familiarity with Governing Law

This Court is of course capable of applying Texas law. Nonetheless, this factor weighs slightly in favor of transfer, as the Southern District of Texas would be "more familiar" with local law and potentially, for that reason, more efficient. *See Jones v. United States*, 2002 WL 2003191, at *4 (E.D.N.Y. Aug. 26, 2002) (transferring FTCA case to Southern District of Georgia because, among other things,"[a] federal district court sitting in Georgia would certainly be more familiar with Georgia law than a district court sitting in New York").

### 8. Plaintiff's Choice of Forum

Plaintiff is correct that his choice of forum is "presumptively" entitled to "substantial deference," *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009), and "should only be disturbed if the factors favoring the alternative forum are compelling." Pl. Opp. at 22 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000)). Here, however, the factors in favor of transfer to the Southern District of Texas *are* compelling: this is a case about torts allegedly committed in the Southern District of Texas; where all the

percipient witnesses other than plaintiff are based in Texas; where the law to be applied is Texas state law; and where plaintiff has sophisticated *pro bono* counsel with an office in Texas.

The Court is not unsympathetic to plaintiff's preference to litigate in the city he now considers his home. Pl. Opp. at 22-23. His New York connection, however, is not particularly strong. Plaintiff did not arrive in New York until 2018; left for college in 2021; and now spends most of the year on his college campus in Worcester, Massachusetts. Barry Decl. ¶ 9. So long as he remains a full time student at Holy Cross, his presence in the Southern District of New York will be transient. Moreover, as discussed above, disruptions to his studies can be minimized by scheduling the trial when school is not in session.

The Court has also considered plaintiff's argument that "[r]eturning to Texas would be difficult for me mentally," Barry Decl. ¶ 8, as well as the supporting affidavit of Dr. Deters, who opines that "forcing Mr. Barry to return to Texas could substantially contribute to a regression in his psychological functioning." Deters Aff. ¶ 20(f). I note, however, that plaintiff voluntarily filed this lawsuit, which will inevitably require him to relieve his experiences in the PIDC, whether he does so on a Zoom deposition from Massachusetts or on the witness stand somewhere in Texas. And while he may be required to appear in a federal courthouse somewhere in Texas, no one will force him to return to the PIDC itself.

Moreover, as Dr. Deters acknowledges, plaintiff's detention at the PIDC was only one of the "highly stressful events" that he experienced over the course of more than a year before being released in the United States. Deters Aff. ¶¶ 17-18, 20(b). Plaintiff was imprisoned and abused by the police in Guinea; hid in his mother's house for "several months," fearing that he would be discovered and experiencing "recurrent nightmares about his experience with the police"; traveled alone to Brazil (where he did not speak the language) at the age of 16; lost his passport, ran out of

money, and lived in a homeless shelter, under "highly challenging conditions," for seven months; and then embarked on a "grueling journey to make it to the United States," traversing Peru, Ecuador, Colombia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico with a group of strangers he met in Brazil, before finally arriving at the U.S. border three months later. *Id.* ¶¶ 11(c)-(f), 12, 18; *see also* Compl. ¶¶ 23-30. According to Dr. Alexander Bryan (who evaluated plaintiff in 2019 and whose conclusions are summarized by Dr. Deters), the "events . . . that resulted in his diagnosis of PTSD are largely the events that occurred while Mr. Barry was living in Guinea." Deters Aff. ¶ 18. That is also where he "experienced the most acute symptoms," which "waned" upon his arrival in the United States." *Id.* ¶¶ 11(j)-(k). By the time Dr. Deters interviewed him in 2022, plaintiff denied any symptoms of depression, feelings of guilt, difficulties with concentration, nightmares, or other "substantial symptoms of PTSD," *id.* ¶ 16, leading Dr. Deters to conclude that he "has made good progress in his recovery." *Id.* ¶ 20(e). Given these facts – together with the inherently speculative nature of Dr. Deters' opinion that returning to Texas "could" impede that progress, *id.* ¶ 20(f) – the Court is not willing to set aside the remainder of its § 1404(a) analysis in order to shield plaintiff from ever having to set foot in the State of Texas.

### 9. Trial Efficiency and the Interests of Justice

At present, "the case is at its earliest stages." *Frame v. Whole Foods Mkt., Inc.*, 2007 WL 2815613, at *7 (S.D.N.Y. Sept. 24, 2007). No discovery has been conducted or even scheduled. Thus, "there would be little loss in judicial economy by transferring the case." *Id.*

## Conclusion

For the foregoing reasons, defendant's motion (Dkt. 23) is GRANTED to the extent that this action is hereby TRANSFERRED to the Southern District of Texas pursuant to 28 U.S.C.

§ 1404(a). The Court does not reach the branch of the motion seeking dismissal of the Complaint

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Dated: New York, New York                    **SO ORDERED**.
       September 26, 2022

_____
**BARBARA MOSES**
**United States Magistrate Judge**